UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Jorge Valdovinos Barajas,

    Petitioner,

vs.          REPORT AND RECOMMENDATION

State of Minnesota,

    Respondent.    Civ. No. 05-856 (DSD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*


I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon a Petition for a Writ of Habeas Corpus, see Title 28 U.S.C. §2254.

The Petitioner appears by Arthur R. Martinez, Esq., and the Respondent appears by Michael D. Trushenksi, Assistant Martin County Attorney.

For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

II.  Facts and Procedural Background

The Petitioner is a State prisoner, who is currently serving an 86-month sentence at the Minnesota Correctional Facility, in Rush City, Minnesota.  The sentence resulted from the Petitioner's conviction on July 10, 2002, in Martin County District Court, on one Count of a Controlled Substance Crime in the First Degree, in violation of Minnesota Statutes Section 152.021, Subdivisions 2(1) and 3(a).

The Petitioner filed an appeal, from a Post-Conviction Motion, to the Minnesota Court of Appeals which was based upon the following assertions:  1) the Trial Court erred in denying the him Post-Conviction relief for a claim alleging ineffective assistance of counsel; and 2) the conduct of the prosecutor deprived him of his Due Process rights.  See, Valdovinos Barajas v. State, 2005 WL 44453 (Minn. App., January 11, 2005), rev. denied (Minn., March 29, 2005).

In addressing the Petitioner's arguments, the Minnesota Court of Appeals summarized the facts, which supported his conviction, as follows:

> Appellant Jorge Barajas was one of several passengers in a vehicle that was pulled over for speeding in Martin County on May 29, 2002. The investigating officer asked for a driver's license from the driver, Cynthia Gonzales, which she claimed not to have. The officer subsequently determined via radio that Gonzales had given him a false name. Gonzales was taken into custody to investigate her

true identity and immigration status. Having determined that Barajas had a valid Washington state driver's license, the officer advised him to drive the vehicle to the law enforcement center in Fairmont. After the officer was instructed by the Immigration and Naturalization Service (INS) to detain Gonzales for further investigation, he returned to the vehicle to retrieve her belongings. The officer noticed an open alcoholic beverage container in the vehicle and asked all of the occupants to exit the vehicle. As a rear seat passenger was exiting, the officer observed that she appeared to place something in her purse, which later proved to be cocaine. A subsequent canine search of the vehicle confirmed the presence of cocaine. All of the adult occupants of the vehicle were arrested, and Barajas was found to be carrying over $1900 in cash.

Following a jury trial, Barajas was found guilty of first-degree controlled-substance crime and sentenced to 86 months' imprisonment. Barajas did not file a direct appeal of the conviction, [footnote omitted] but he sought postconviction relief on several grounds. In his petition for postconviction relief, Barajas alleged that he was denied effective assistance of counsel prior to and during his trial, that he was prejudiced at trial by prosecutorial misconduct, and that the district court made certain rulings that entitled him to postconviction relief. The district court denied Barajas's petition for postconviction relief. This appeal followed.

Id., at *1.[1]

---

[1]The Petitioner does not appear to challenge the factual findings made by the State Courts and, in any event, the Record before us contains no testimony, or other evidence, which would rebut, by clear and convincing evidence, the presumption of correctness in the State Court's factual findings.  See Title 28 U.S.C. §2254(e)(1);

Based upon these facts, the Minnesota Court of Appeals affirmed the Petitioner's convictions, finding that the Petitioner failed to establish an ineffective assistance of counsel claim, and that the Trial Court did not abuse its discretion by denying the Petitioner's Post-Conviction Motion based on claimed prosecutorial misconduct. See, Id. at *4. A Petition for Review to the Minnesota Supreme Court, which was brought by the Petitioner, was denied on March 29, 2005.

In his Federal Petition, which he filed on April 29, 2005, the Petitioner raises the following grounds for Habeas relief: 1) that the Petitioner received ineffective assistance of counsel; 2) that the Petitioner's Due Process rights were denied by the conduct of the prosecutor; and 3) that his sentence violated the directives articulated in the Supreme Court's decisions in United States v. Booker, 543 U.S. 220 (2005), and Blakely v. Washington, 542 U.S. 296 (2004).

III.  Discussion

A.    Standard of Review.   "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of

---

Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). Accordingly, for the purposes of this Petition, we accept, as our factual Record, those facts which were set forth by the Minnesota Court of Appeals in Valdovinos Barajas v. State, 2005 WL 44453 (Minn. App., January 11, 2005), rev. denied (Minn., March 29, 2005).

a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Title 28 U.S.C. §2254(a). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). As a result, before a Writ may issue, the Petitioner must establish that the State's exercise of custody over his person is an affront to the Constitution, a Federal law, or a Federal treaty. Id.; see also, Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir. 2005); Newton v. Kemna, 354 F.3d 776, 782 (8th Cir. 2004); Robinson v. Leapley, 26 F.3d 826, 829 (8th Cir. 1994).

In 1996, Congress restricted the scope of a Federal Court's review of Habeas Petitions, where the underlying claims were adjudicated in State Court. See, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996)("AEDPA"); see also, Lockyer v. Andrade, 538 U.S. 63, 70 (2003) ("AEDPA circumscribes a federal habeas court's review of a state court decision."). A Federal Court's authority to vitiate State Court decisions, by the granting of a Writ of Habeas Corpus, is now limited to the narrow class of claims which have been fully exhausted in the State Courts, and which involve an adjudication that either:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Title 28 U.S.C. §2254(d).

The Supreme Court has determined that the "contrary to," and "unreasonable application" clauses of Section 2254(d)(1), present two separate grounds on which a Federal Court may grant Habeas relief to claims adjudicated in the State Courts.   See, Williams v. Taylor, 529 U.S. 362 (2000).  The Court has explained, as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case.

Id. at 412-13.

The Court further explained that a consideration of a State Court's decision, under the "unreasonable application" clause, requires a Federal Court to "ask whether the state

-6-

court's application of clearly established federal law was objectively unreasonable." Id. at 409; see also, Davis v. Norris, 423 F.3d 868, 874-75 (8th Cir. 2005); LaFrank v. Rowley, 340 F.3d 685, 689 (8th Cir. 2003), cert. denied, 541 U.S. 950 (2004).

Under this heightened standard of review, a Federal Court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly," but "[r]ather, that application must also be unreasonable." Id. at 411; see also, Davis v. Norris, supra at 875; Siers v. Weber, 259 F.3d 969, 972-73 (8th Cir. 2001)(examining the impact of Williams on Habeas proceedings), cert. denied, 534 U.S. 1138 (2002); Newman v. Hopkins, 247 F.3d 848, 850-51 (8th Cir. 2001), cert. denied, 536 U.S. 915 (2002); Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), cert. denied, 532 U.S. 1024 (2001).

As a consequence, Williams affirmed the distinction, which had previously been drawn by several Circuit Courts, that the "contrary to" clause was to be used in cases addressing pure questions of law and mixed questions of law and fact, whereas the "unreasonable application" clause addressed factual determinations. See, e.g., Evans v. Rogerson, 223 F.3d 869, 872 (8th Cir. 2000)(the "in custody" determination for Miranda purposes is a question of law subject to the first prong of Section 2254(d),

when the relevant facts are undisputed).  Therefore, when a petitioner argues that the State Court improperly applied clearly established Supreme Court law to a particular set of facts, the Federal Courts may not grant a Writ absent a finding that such an application was unreasonable.

Additionally, Section 2254(e)(1) retains a presumption of correctness for all purely factual determinations, which are rendered by a State Tribunal, and which can, as a result, only be rebutted by the production of clear and convincing evidence to the contrary.  See Lupien v. Clarke, 403 F.3d 615, 618 (8th Cir. 2005); Green v. Norris, 394 F.3d 1027, 1029 (8th Cir. 2005).  Despite this presumption, Section 2254(d)(2) authorizes the issuance of a Writ if the State Court Judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir. 1996)("[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise."), cert. denied, 521 U.S. 1127 (1997).  Thus, "[f]actual findings by the state court 'shall be presumed to be correct,' a presumption that will be rebutted only 'by clear and convincing evidence.'"  Kinder v. Bowersox, supra at 538, citing Title 28 U.S.C. §2254(e)(1).

B.   <u>Legal Analysis</u>.  As we have noted, the Petitioner seeks Habeas relief on the grounds that:  1) he received ineffective assistance of counsel; 2) he was deprived of his Due Process rights by misconduct on the part of the prosecutor; and 3) he was "illegally sentenced" to an 86-month imprisonment under the Minnesota Sentencing Guidelines, pursuant to <u>Booker</u> and <u>Blakely</u>.  The Respondent opposes the Petition on its merits, and we address each of the Petitioner's contentions in turn.

1.   <u>The Petitioner's Assertion of Ineffective Assistance of Counsel</u>.

a.   <u>Standard of Review</u>.  "Whether [the Petitioner] was deprived of his right to effective assistance of counsel is analyzed under the familiar two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."  <u>Smith v. United States</u>, 182 F.3d 1023, 1025 (8th Cir. 1999).  Under that test, the Petitioner must first "show that counsel's conduct fell below an objective standard of reasonableness," and then "must show that counsel's alleged ineffectiveness prejudiced the defense."  <u>Smith v. United States</u>, supra at 1025-26; <u>Siers v. Weber</u>, supra at 974, citing <u>Strickland v. Washington</u>, supra at 687.  "In order to show prejudice, a habeas petitioner must establish 'that there is a reasonable probability that but for counsel's unprofessional errors, the result * * * would have been different."  <u>Siers v. Weber</u>, supra at 974, quoting <u>Strickland v. Washington</u>, supra at 694.  The

Court must look at the evidence before the Judge, or Jury, as a whole, in order to determine the effect of any alleged attorney errors.   Strickland v. Washington, supra at 695.  The ultimate focus of the inquiry is fundamental fairness in the proceeding, with relief granted only where there has been a breakdown in the adversarial process. Id. at 696.

    b. Legal Analysis.  The Petitioner argues that he was deprived of his Sixth Amendment right to effective assistance of Trial counsel, because his attorney failed to make certain pretrial Motions that would have sought to suppress evidence obtained during the search of the vehicle; failed to request a "mere presence" Jury Instruction; and failed to raise certain other objections during the Trial. Specifically, the Petitioner contends that the Minnesota Court of Appeals -- and the Minnesota Supreme Court, when it declined to review the lower Court's decision -- erred in finding that the Trial Court did not abuse its discretion in denying the Petitioner's Post-Conviction Motion with respect to the ineffective assistance of counsel claim.  See, Petitioner's Memorandum in Support of Petition, Docket No. 2, at 4.

  As a preliminary matter, the Minnesota Court of Appeals applied case law which is consistent with clearly established Federal law -- namely, the Strickland test -- in

-10-

analyzing the Petitioner's claims for ineffective assistance of counsel.  See, <u>Valdovinos</u> <u>Barajas v. State</u>, supra at *2.  Therefore, our inquiry is limited to whether the State Court's application of the <u>Strickland</u> test, to the Petitioner's claims, was unreasonable. See, <u>Honeycutt v. Roper</u>, 426 F.3d 957, 960 (8th Cir. 2005)(noting that when a State Court properly identifies the <u>Strickland</u> test as the applicable standard for ineffective assistance of counsel claims, the Federal Court's review is limited to the reasonable application of the law to the facts); <u>Title 28 U.S.C. §225(d)(1)</u>.

The Petitioner's first contention is that his attorney ineffectively represented him by failing to bring pretrial Motions to suppress the evidence obtained from a "stop and search" of the vehicle in which the Plaintiff was located, on the grounds that the search lacked probable cause, and that the Petitioner was wrongfully detained.

The Petitioner, in his argument before the Minnesota Court of Appeals, cited <u>State v. Albino</u>, 384 N.W.2d 525 (Minn. App. 1986), for the proposition that a party's mere presence in a vehicle, in which narcotics are found, does not provide probable cause for an arrest.  In its decision as to Post-Conviction relief, the Minnesota Court of Appeals  found that the <u>Albino</u> case was inapposite to the facts here as, in <u>Albino</u>, there was no initial traffic infraction, nor any implication, by the initial driver of the

vehicle, which imputed possession of the contraband to the other passengers.

Specifically, the Court noted:

> Here, the investigation that led to the discovery of cocaine arose from the partially consumed beverage on the front-seat floor of the vehicle that Barajas had just driven to the law enforcement center. In the course of investigating the open-container offense, the officer observed the concealment of cocaine by another passenger. When the officer questioned Gonzales about the cocaine, she incriminated herself, Barajas, and the passenger who had cocaine on her person. These additional incriminating circumstances constitute more than "mere presence." On these facts, Barajas has neither established that his counsel's performance was objectively unreasonable nor has he established a reasonable probability that moving to suppress the evidence would have changed the outcome of this case.

<u>Valdovinos Barajas v. State</u>, supra at *3.

We find the Minnesota Court of Appeal's application of the Strickland test, to the factual circumstances involved here, to be entirely reasonable, and therefore, we conclude that the Petitioner's claim for ineffective assistance of counsel, on this basis, is without merit.

Similarly, we find that the Court of Appeals reasonably applied the <u>Strickland</u> test to the Petitioner's claim that his attorney erred in failing to request a "mere presence" Jury Instruction. To be entitled to Habeas relief, the Petitioner must

-12-

demonstrate that the State Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  The Petitioner has failed to cite any Supreme Court decision, or any precedent, that would establish that his attorney's failure to request a "mere presence" Jury Instruction violated his constitutional right to effective counsel, especially where the State Court had determined that the given Jury Instruction was correct under State law.  Furthermore, as highlighted by the Minnesota Court of Appeals -- and as confirmed by our independent review of the Record -- the Petitioner's counsel had objected to a Jury Instruction that would have allowed the Jury to "draw a permissive inference of knowing possession of a controlled substance by multiple persons."  <u>Id.</u>; see also, Trial Transcript, <u>Appendix to Respondent's Memorandum in Opposition to Petition</u>, <u>Docket No. 7</u>, at 71.   Therefore, the ineffective counsel claim as to the absence of a "mere presence" Instruction also fails.

As to the Petitioner's other contentions -- namely, that he received ineffective assistance of counsel by failing to object to the "endless references to the INS and immigration issues during the trial" --  we find that those claims also do not merit the relief that the Petitioner seeks.  The Minnesota Court of Appeals reviewed the Trial Record and found that the references to immigration status, which the Petitioner

-13-

contends should have been challenged by his counsel, were only in regards to the circumstances underlying the detention of the initial driver of the vehicle, Cynthia Gonzales, and not of the Petitioner. The Court reviewed the Record, as we have, and found that the prosecutor's statements, in context, were neither inflammatory nor objectionable. See, <u>Valdovinos Barajas v. State</u>, supra at *4.

In summary, as to the Petitioner's claims for ineffective assistance of counsel, we are satisfied that the Minnesota Court of Appeals applied case law consistent with clearly established Federal law, and their application of the factual findings to the law was also reasonable. Thus, we recommend that the Petitioner's Petition for Habeas Corpus relief, on the ground of ineffective assistance of counsel, be denied.[2]

---

[2]The Petitioner also contends that there was no probable cause for his arrest, and therefore, his detention by law enforcement was unlawful, and his attorney should have filed a Motion with respect to those objections. Our review of the Record, however, discloses that the Petitioner was not arrested until after he voluntarily drove to a law enforcement center, where evidence of crimes were in plain view, which resulted in another passenger of the same vehicle implicating the Petitioner in the drug offense of which he was convicted. While Pretrial Motions can be filed in any case, here we find the absence of such a Motion, on the issue of arrest and detention, inconsequential. <u>Valdovinos Baraja v. State</u>, supra at *3.

-14-

2.    <u>Prosecutorial Misconduct</u>.

a.    <u>Standard of Review</u>.  "We will reverse a conviction for prosecutorial misconduct only if "(1) the prosecutor's remarks or conduct were improper, and (2) the remarks or conduct prejudicially affected the defendant's substantial rights so as to deprive him a fair trial." <u>United States v. Ziesman</u>, 409 F.3d 941, 953 (8th Cir. 2005), cert. denied, --- U.S. ---, 126 S.Ct. 579 (2005), quoting <u>United States v. Beckman</u>, 222 F.3d 512, 526 (8th Cir. 2000).  "If we reach the second step, we consider '(1) the cumulative effect of the misconduct, (2) the strength of the properly admitted evidence of the defendant's guilt, and (3) any curative actions taken by the trial court.'" <u>United States v. Londondio</u>, 420 F.3d 777, 787 (8th Cir. 2005), quoting <u>United States v. Ziesman</u>, supra at 953, quoting, in turn, <u>United States v. Beckman</u>, supra at 526.  Thus, a Habeas petitioner "bears the heavy burden of showing that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." <u>Mack v. Casper</u>, 92 F.3d 637, 643 (8th Cir. 1996), cert. denied, 520 U.S. 1109 (1997), citing <u>Jones v. Jones</u>, 938 F.2d 838, 844-45 (8th Cir. 1991).

b.    <u>Legal Analysis</u>.  The Petitioner contends that he was denied his Due Process rights by the prosecutor's "endless references * * * to the INS and

immigration status in Petitioner's jury trial."   The Petitioner maintains that those references were "irrelevant and prejudicial to the Petitioner's case."   Petitioner's Memorandum in Support of Petition, Docket No. 2, at 8.   In support of those assertions, the Petitioner maintains that, "[b]y bringing immigration evidence to the forefront of the present case, the prosecutor failed to live up to [his] obligation[s]." Id. at 8-9.

The Minnesota Court of Appeals considered the Petitioner's prosecutorial misconduct claim, and found it to be without merit.   Valdovinos Barajas v. State, supra at *4.   In so finding, the Court determined that the Petitioner's characterizations of the prosecutor's comments, which referenced the INS, were not supported by the Record.   Our independent review of the Record reaches a similar conclusion. In particular, the Court noted that the prosecutor had not improperly commented on the Petitioner's nationality, or immigration status, to incite racial bias.   Id. at *4.   The Court's finding, with which we concur, was based upon the following:

> From our careful review of the record, it is evident that each reference to the INS by the prosecutor was in the context of his description of the circumstances of Gonzales's detention.   Barajas was neither linked nor compared to Gonzales, and his nationality and immigration status were never addressed at trial.   Information regarding Gonzales's detention was relevant because it explained the

-16-

circumstances leading to the discovery of cocaine in the
vehicle.

Id.

The Court also noted that the prosecutor's statements, in that context, could not be

construed as inflammatory.   Id.

We have reviewed the Petitioner's allegations and, consistent with the

conclusion reached by the State Courts, we find that he simply has not presented

facts, or legal authority, which demonstrate that the prosecutor engaged in any

improper conduct, and therefore, it is unnecessary for us to proceed to the second

step of the analysis.   However, if we were to do so, we would join the Minnesota

Court of Appeals in concluding that the remarks were not inflammatory, and therefore,

we not so prejudicial as to deny him a fair Trial.   As such, we cannot conclude that the

State Court's decision was an unreasonable application of Federal constitutional law.

Williams v. Taylor, supra at 413.   Accordingly, we recommend that this aspect of the

Petition be denied.

3.   The Petitioner's Sentence.

a.   Standard of Review.   A criminal defendant is entitled to a

Jury determination as to whether he is guilty of every element of the crime charged,

beyond a reasonable doubt.   United States v. Gaudin, 515 U.S. 506, 510 (1995).   In

-17-

2000, the United States Supreme Court reviewed the historical importance of a Trial by Jury, and the requirement of proof beyond a reasonable doubt, and concluded that "[t]he historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." Apprendi v. New Jersey, supra at 482-83.  Accordingly, the Court, in Apprendi, held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   Apprendi v. New Jersey supra at 490.

Following the Supreme Court's decision in Apprendi, several Courts of Appeals, including our own, interpreted the holding of Apprendi in such a manner that a Jury determination was not required in order to apply "sentencing factors that increase a defendant's guidelines range but do not increase the statutory maximum." See, United States v. Evans, 285 F.3d 664, 672 (8th Cir. 2002), cert. denied, 537 U.S. 1196 (2003); see also, United States v. Francis, 367 F.3d 805, 820 (8th Cir. 2004), cert. granted, and judgment vacated, --- U.S. ---,125 S.Ct. 988 (2005);  United States v.

-18-

Jardine, 364 F.3d 1200, 1209 (10th Cir. 2004), cert. granted, and judgment vacated, ---

U.S. ---, 125 S.Ct. 1024 (2005); United States v. Alvarez, 358 F.3d 1194, 1212 (9th

Cir. 2004); United States v. Helton, 349 F.3d 295, 299 (6th Cir. 2003); United States

v. Johnson, 335 F.3d 589, 591 (7th Cir. 2003); United States v. Randle, 304 F.3d 373,

378 (5th Cir. 2002); United States v. Garcia, 240 F.3d 180, 183 (2nd Cir. 2001); United

States v. Caba, 241 F.3d 98, 101 (1st Cir. 2001); United States v. Gerrow, 232 F.3d

831, 834 (11th Cir. 2000), cert. denied, 534 U.S. 830 (2001).

Despite the agreement among the Courts of Appeals, as to the scope of

Apprendi, the Supreme Court has since held to the contrary, and thereby extended the

Rule in Apprendi, such that "the 'statutory maximum' for Apprendi purposes is the

maximum sentence that a judge may impose **solely on the basis of the facts**

**reflected in the jury verdict or admitted by the defendant**."   Blakely v.

Washington, supra at 2537 [emphasis in original], citing Ring v. Arizona, 536 U.S.

584, 602 (2002).  Thus, under Blakely, where the presence of certain factors allows for

a sentence to be increased under a State's sentencing scheme, the presence of such

factors must be found by a Jury, beyond a reasonable doubt.

Soon thereafter, the Supreme Court, in the aftermath of Blakely, decided United

States v. Booker, supra, and its companion case, United States v. Fanfan, 543 U.S.

-19-

220, ---, 125 S.Ct. 738  (2005), in which the Court reaffirmed the rule announced in

Apprendi, that "[a]ny fact (other than a prior conviction) which is necessary to

support a sentence exceeding the maximum authorized by the facts established by a

plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury

beyond a reasonable doubt."   Id. at 756.   The Supreme Court also applied the

analysis, which was promulgated in Blakely, to the Federal Sentencing Guidelines, and

found that the provisions that make the guidelines mandatory were unconstitutional,

and required any subsequent sentencing determinations to follow a "reasonableness"

standard.  Id. at 765-66, 769; see also, United States v. Williams, 408 F.3d 1077-78

(8th Cir. 2005)(summarizing the effects of Booker upon the Sentencing Guidelines).

        b.    Legal Analysis.  The Petitioner challenges his sentence under

Blakely, and Booker, urging that the Trial Court violated his Sixth Amendment rights

by following the Minnesota Sentencing Guidelines, as well as the Federal Sentencing

Guidelines.

     As is pertinent to the Petitioner's argument, the Petitioner's sentence, which

resulted from his conviction on one Count of a Controlled Substance Crime in the

First Degree, bears a maximum sentence, under Minnesota law, of thirty (30) years, or

three hundred and sixty (360) months.  See Minnesota Statutes Section 152.021,

Subdivision 3(a).  At his Sentencing Hearing, the Petitioner was sentenced to a term

of 86 months of imprisonment which, he contends, is not reasonable, under Blakely

and Booker, because of the Petitioner's "minor involvement in the case, and lack of

evidence to prove that Petitioner was in direct possession of a controlled substance."

Petitioner's Memorandum, at p. 11.

The threshold issue, which confronts us, is whether either Blakely, or Booker,

apply retroactively, since both decisions were issued after the Petitioner's conviction

and sentence became final on November 12, 2002.[3]  An extended discussion as to the

retroactivity of those decisions is unnecessary, as our Court of Appeals has

concluded, after the requisite analysis, that no retroactivity applies, and a Habeas

Petitioner is unable to collaterally attack his conviction or sentence, on Booker or

_____

[3]Under Minnesota law, a sentenced party has ninety (90) days in which to
directly appeal a judgment and sentence.   See, Rule 28.05, Minnesota Rules of
Criminal Procedure; Clark v. State, 2005 WL 3291088 (Minn. App., December 6,
2005)(citing Rule 28.05).   The Petitioner was sentenced on August 12, 2002, and
therefore, it appears that the Petitioner's conviction and sentence became "final" on
November 12, 2002.  See, Rule 28.02, Subdivision 4(3), and Rule 28.05, Subdivision
1(1), Minnesota Rules of Criminal Procedure (allowing ninety (90) days, after the entry
of final Judgment in the Trial Court, to file an appeal in the Minnesota Court of
Appeals), see also, Casper v. Bohlen, 510 U.S. 383, 390 (1994)("A state conviction
and sentence become final for purposes of retroactivity analysis when the availability
of direct appeal to the state courts has been exhausted and the time for filing a petition
for a writ of certiorari has elapsed or a timely filed petition has been finally denied.").

<u>Blakely</u> grounds, if the conviction and sentence became final before the dates on which

<u>Booker</u>, and <u>Blakely</u>, were decided.  See, <u>Never Misses A Shot v. United States</u>, 413

F.3d 781, 783-84 (8th Cir. 2005)(citing cases); <u>United States v. Stoltz</u>, 149 Fed.Appx.

567, 568-569 (8th Cir. 2005)("Just as Booker cannot be applied retroactively, neither

can Blakely.")(citing cases); <u>United States v. Duran</u>, 147 Fed.Appx. 625, 626 (8th Cir.

2005)(holding neither <u>Booker</u>, nor <u>Blakely</u>, are retroactive); <u>United States v. Arrington</u>,

2005 WL 1522124, at *2 (D. Minn., June 28, 2005)(same); <u>Jackson v Dingle</u>, 2005 WL

1270594 (D. Minn., May 25, 2005)(same); <u>Schiriro v. Summerlin</u>, 542 U.S. 348, 352-

56 (2004)(holding that the rule announced in <u>Ring v. Arizona</u>, supra, was not a

substantive rule, and was not a watershed procedural rule).[4]   Therefore, we hold that

the rules announced in <u>Blakely</u> and <u>Booker</u> do not apply retroactively, on collateral

review, and accordingly, we find that the Petitioner may not rely on either <u>Blakely</u> or

<u>Booker</u> as a ground for Habeas Corpus relief.  See, <u>In re Dean</u>, 374 F.3d 1287, 1290

---

[4]The rules announced in <u>Ring</u>, and <u>Blakely</u>, parallel each other to such an extent that, at least within this District, the holding in <u>Shiriro v. Summerlin</u>,  542 U.S. 348, 352-56 (2004), has been found to be controlling on the question of whether <u>Blakely</u> applies retroactively.  See  <u>United States v. Arrington</u>, 2005 WL 1522124, at *2 (D. Minn., June 28, 2005); <u>Jackson v Dingle</u>,  2005 WL 1270594, at *1 (D. Minn., May 25, 2005).

(11th Cir. 2004)(<u>Blakely</u> does not apply retroactively on collateral review); <u>Gutierrez</u>

<u>v. United States</u>, 2005 WL 1490361, at *1 (D. Minn., June 23, 2005)(same).[5]

Therefore, finding no merit in the Petition for Habeas Corpus, we recommend

that the Petition be dismissed with prejudice.

NOW, THEREFORE, It is  –

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed with

prejudice.

Dated:  February 15, 2006              _s/Raymond L. Erickson_
                                       Raymond L. Erickson
                                       CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and

D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by

filing with the Clerk of Court, and by serving upon all parties **by no later than March**

---

[5]Even if we were to reach the issues concerning the Petitioner's sentence, we would find no error, as the Petitioner merely contends that his sentence was unreasonable in view of his minor role in the offense of which he was convicted. The simple fact is that the Petitioner was convicted of that offense, and the sentence he received is well below the statutory maximum of 360 months.

-23-

**6, 2006,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 6, 2006,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.